UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK LANEY,

Plaintiff,

v.

**DECISION AND ORDER**
14-CV-836S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.

---

1.      Plaintiff Mark Laney challenges an Administrative Law Judge's ("ALJ")
determination that he is not disabled within the meaning of the Social Security Act ("the
Act").   Plaintiff alleges that he has been disabled since November 11, 2009, due to
chronic pain from lower back, neck, and ankle injuries following a work-related accident,
as well as psychiatric impairments.   (R. 16).[1]   Plaintiff protectively filed a Title II
application for Disability Insurance Benefits (DIB) and a Title XVI application for
Supplemental Security Income (SSI) on February 17, 2011, which were initially denied.
On November 28, 2012, ALJ David S. Lewandowski conducted a hearing at which
Plaintiff, who was represented by counsel, and a vocational expert appeared and
testified.   At the time of the hearing, Plaintiff was 32 years old, with limited education
and with past relevant work as an auto detailer.   (R. 19).   On January 22, 2013, the ALJ
issued a decision finding that Plaintiff was not disabled.   The Appeals Council denied

---

[1] Citations to the administrative record are designated as "R."

Plaintiff's request for review on August 26, 2014.  Plaintiff filed the current action on October 9, 2014, challenging the Commissioner's final decision.[2]

2.       On March 6, 2015, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 8).  On May 5, 2015, the Commissioner filed a Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief. (Docket No. 10).  Plaintiff filed a reply on May 26, 2015 (Docket No. 11), at which time this Court took the matter under advisement without oral argument.  For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

3.       A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's January 22, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

4.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

5.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

6.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is   currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.   Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

7.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.   Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f);  Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

8.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since November 11, 2009, the alleged onset date (R. 13); (2) Plaintiff's lumbar degenerative disc disease, lumbar disc bulges, and cervical degenerative disc disease are "severe" impairments within the meaning of the Act, but his left ankle impairment and mental impairments are non-severe (R. 13-14); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 15); (4)

Plaintiff is unable to perform his past relevant work, but has the residual functional

capacity ("RFC") to perform light work,[3] except that he can occasionally perform

postural activities; [4] cannot climb ladders, ropes or scaffolds; should avoid exposure to

industrial hazards and extreme cold temperatures; can occasionally twist and turn the

cervical and lumbar spines; can occasionally perform pushing, pulling carrying, and

lifting; can sit and stand for no more than two hours at a time during an eight hour

workday; requires a sit/stand option; can understand, remember, and carry out simple

instructions and perform simple tasks; can only occasionally engage in simple decision-

making, and have no more than occasional interaction with others (R. 15); and (5)

Plaintiff can perform jobs that exist in significant numbers in the national economy,

including as a mail room clerk, counter video clerk, and marking clerk.  (R. 20).  Thus,

Plaintiff was not under a disability, as defined by the Act, at any time from November 11,

2009, through the date of the ALJ's decision.  (Id.).  Plaintiff contends the determination

that he is not disabled is based legal error and is not supported by substantial evidence.

9.      Plaintiff contends that the RFC was not based on substantial evidence

because the ALJ did not properly weigh and consider the opinions of two treating

physicians.  Generally, an ALJ must "comprehensively set forth [his] reasons for the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 414.967(b), 404.1567(b).

[4] The Commissioner interprets "occasionally" to mean "occurring from very little up to one-third of the time." Social Security Ruling 83–10 (with regard to sedentary work definition); See Reda v. Astrue, No. 08–CV–6589, 2010 WL 2104521, at *2 (W.D.N.Y. May 24, 2010).

weight assigned to a treating physician's opinion." Burgess v. Astrue, 537 F.3d 117, 129-30 (2d Cir. 2008) (quoting Halloran, 362 F.3d at 33); 20 C.F.R. § 404.1527(d)(2) (the Agency "will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion").  Nevertheless, "while the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (internal citations omitted).

Here, the ALJ assigned "some credibility" to the opinions of treating physicians Drs. Michael Geraci and Eugene Gosy (as well as to the opinions of treating physician Dr. Michael Cicchetti and independent medical examiner Dr. David Bagnall), "as they indicate that [Plaintiff] is less than totally disabled." (R. 18).  In particular, the ALJ noted that these opinions were issued in the worker's compensation context, which has different standards for disability determinations.  (Id.).  Therefore, the ALJ stated, "additional weight is not accorded to these assessments." (Id.).  Plaintiff asserts that, in focusing on the disability ratings contained in the treatment notes, the ALJ failed to acknowledge and properly consider specific functional limitations in Dr. Geraci's and Dr. Gosy's opinions.  According to Plaintiff, if given controlling weight, these opinions would limit him to, at most, sedentary work.  Plaintiff asserts this error harmed him because the VE testified that there was no sedentary work available in the national economy for someone with Plaintiff's non-exertional impairments.  (See R. 69-73).

10.   In support of this argument, Plaintiff first points to certain medical records from November and December of 2009.  (Citing R. 270-276, 473, 464).  Plaintiff's alleged physical impairments resulted from injuries to his back, neck, and left ankle

sustained in a fall from a ladder at work on November 11, 2009.  (R. 16).  At his employer's directive, Plaintiff sought treatment at HealthWorks WNY, an occupational health provider.  (R. 270-276; see R. 436, 438).  Dr. Stuart Dorfman and a Physician's Assistant treated Plaintiff on four occasions in the two weeks following the accident.  (R. 270-276).  Dr. Dorfman then referred Plaintiff to Buffalo Spine & Sports for further treatment (R. 270), where Plaintiff saw Dr. Michael Geraci, a physical medicine and rehabilitation specialist, on November 23, 2009, for an initial consultation.  (R. 436-437).  At that visit Dr. Geraci found "significant spasm" and "range of motion limited by 50% in all directions" of the lumbar spine, and Plaintiff was unable to perform the squat tests.  (R. 436).  Dr. Geraci diagnosed probable acute lumbar focal disc herniation and prescribed physical therapy, epidural steroid injection, and oral prednisone.  (Id.).  He noted that Plaintiff's prognosis was "good," but opined that Plaintiff had "a temporary total disability for his work and a temporary partial disability to a marked degree for all other work."  (R. 436-437).

As an initial matter, Plaintiff erroneously attributes the Health Works WNY records to Dr. Geraci, of Buffalo Spine & Sports Medicine.  Nevertheless, to the extent Plaintiff argues that the ALJ failed to give appropriate weight to the cited medical opinions, the Court finds no error.  These opinions were issued in the few weeks immediately following Plaintiff's 2009 injury and each time, the treatment provider indicated that his disability was temporary.  (R. 270, 473, 464).  Furthermore, as the ALJ noted, these records indicated that Plaintiff was "less than totally disabled," and within a short period after his accident.  (R. 18).  The ALJ's rationale was not fatally undermined, as Plaintiff contends, by Dr. Geraci's December 17, 2009 "opinion" contained in a form

billing statement to the Worker's Compensation Board, where he indicated Plaintiff's "percentage temporary impairment" was 100%. (R. 464). This assessment is "unsupported by any further detail, and is not a 'medical opinion' entitled to any special significance, but is instead a determination within the purview of the Commissioner." Payne v. Colvin, No. 14-CV-584S, 2015 WL 5227454, at *3 (W.D.N.Y. Sept. 8, 2015) (citing 20 C.F.R. § 416.927(d)(1), Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999)). The ALJ's discussion demonstrates that he reviewed Dr. Geraci's note and the contemporaneous HealthWorks WNY records, and he fulfilled his duty to weigh them together with the other medical evidence. (See R. 18, citing exhibits).

11.      Plaintiff next points to the treatment records of Dr. Gosy, his pain management specialist, with whom he initiated treatment on November 11, 2010. (R. 322). Dr. Gosy initially assigned Plaintiff a disability rating of 66.6% for worker's compensation purposes. (Id.). On December 15, 2010, Dr. Gosy assessed Plaintiff as 50% disabled, noting that Plaintiff was unable to return to his work as a car detailer but that "[h]e is contemplating vocational retraining." (R. 344). In January 2011, Plaintiff returned for a follow-up visit, at which time Dr. Gosy stated Plaintiff was able to maintain his activities of daily living and his ankle pain was well-controlled, and again opining Plaintiff was 66% disabled. (R. 407, 409). On February 9, 2011, Dr. Gosy specified work-related restrictions for Plaintiff, including lifting no more than ten pounds, no prolonged sitting or prolonged standing for more than two hours at a time, and no repetitious bending. (R. 406). Beginning in May of 2011, and remaining consistent for the rest of the record, Dr. Gosy opined that Plaintiff was 50% disabled. (R. 612, 616,

621, 624, 801).   At the May 2011 visit, Dr. Gosy also noted: "He is looking for a sedentary employment position."  (R. 612).

Plaintiff insists that the functional limitations and the statement regarding sedentary work indicate that Dr. Gosy opined Plaintiff is only capable of such work.  He further asserts these opinions should have been given controlling weight.   The note indicates, however, that Plaintiff reported he was looking for sedentary work and does not amount to a strict medical limitation; rather, this, along with the prior statement that Plaintiff was "contemplating vocational retraining," reflected an acknowledgement that Plaintiff was considering finding new employment.  (R. 344, 612).  Furthermore, the ALJ credited other elements of Dr. Gosy's opinions throughout his decision, including with regard to Plaintiff's ankle pain (R. 14), spine examination results (R. 16), and pain control. (R. 17).   The ALJ also incorporated certain of the limitations into the RFC, including that Plaintiff can sit and stand for no more than two hours at a time. (R. 15).

12.   While Dr. Gosy's specific ten pound weight limit does not meet the requirements for light work, the record contains substantial evidence contradicting this restrictive limitation.  For example, treating physician Dr. Michael Cicchetti, of Buffalo Spine & Sports, saw Plaintiff on April 23, 2010, and assessed work-related restrictions, to be in place for six weeks, which included no prolonged sitting or prolonged standing for greater than thirty minutes at a time and no lifting greater than 20 pounds.  (See R. 17; R. 295, 453).  See Richardson, 402 U.S. at 402 (The written report of an examining physician, "despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant.").   Moreover, the ALJ gave "significant

9

weight" to the June 18, 2011 opinion of consultative examiner Dr. Nikita Dave based on her examination of Plaintiff and her expertise in the field of physical medicine and rehabilitation.  (R. 17).  Dr. Dave opined that, among other limitations, Plaintiff had "moderate limitations for repetitive bending, twisting through the cervical/lumbar spine, prolonged sitting, standing, lifting, carrying, pushing, and pulling of greater than moderately-weighed objects."  (R. 578-579); see Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence, even in contradiction of treating physician opinion).  The ALJ also afforded "partial weight" to the opinion of State Agency medical consultant, J. Dale, MD, in light of "his comprehensive review of the record."  (R. 18, 594).  The ALJ did not assign greater weight to this opinion because it did not specify postural limitations; however, the consultant opined that Plaintiff "should be able to walk 6 hrs. and to lift 20 lbs. occ., 10 lbs. freq./8 hour workday".  (R. 18; 594); see Tanner v. Colvin, No. 13-CV-746-JTC, 2015 WL 6442575, at *6 (W.D.N.Y. Oct. 23, 2015) ("[S]tate agency medical consultants are 'highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'") (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)).

13.    Although the RFC "may not perfectly correspond" with any one of the medical opinions, the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (citing Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).  As

the ALJ explained in his decision, he considered the opinions of Plaintiff's treating physicians and the consultative examiners, along with Plaintiff's subjective complaints, when determining Plaintiff's RFC. (R. 15-18). Accordingly, the Court finds that the RFC is consistent with the record as a whole.

14. Plaintiff also contends that remand is necessary to resolve an alleged inconsistency between the ALJ's Step 2 finding that Plaintiff's mental impairments were non-severe and the RFC determination, which nevertheless incorporates certain mental limitations. (See R. 14, 15). This argument must fail. First, the Regulations state that the Agency will consider all of a claimant's medically determinable impairments, including those that are not "severe," when assessing a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(2); 416.945 (a)(2); see also Morales v. Colvin, No. 13-CV-550S, 2014 WL 4829351, at *4 (W.D.N.Y. Sept. 29, 2014) (any purported error at Step Two "in failing to identify a severe impairment, however, is harmless if that impairment is specifically considered during the subsequent steps") (citing Reices–Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013)). Thus, the ALJ committed no *per se* legal error when he found no severe mental impairment, yet included non-exertional mental limitations in Plaintiff's RFC.

Second, the Court finds no flaw with respect to the ALJ's analysis of Plaintiff's mental impairments or with his giving great weight to consultative psychologist Dr. Susan Santarpia's findings. (R. 14-15; 570-574). The ALJ sufficiently explained his rationale. Here, the ALJ noted that "the record reflects several psychiatric diagnoses, including attention deficit-hyperactivity disorder and conduct disorder, by history …," but found that Plaintiff's medically determinable mental impairments "do not cause more

than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe." (R. 14). The ALJ then specifically acknowledged that "[d]espite this conclusion," he included limitations in the RFC "that correlate to the June 2011 findings of [Dr. Santarpia], based on the significant weight accorded her assessment" of Plaintiff. (Id.). Thus, the Court is aware of the specific evidentiary basis for the limitations.

Moreover, the ALJ examined the four broad functional areas for evaluating mental disorders, as set forth in the Regulations. In this analysis, he found no limitations in activities of daily living or social functioning, mild limitation in concentration, persistence, and pace, and no episodes of decompensation of extended duration. (R. 14-15); 20 CFR §§ 404.1520a, 416.9201. The ALJ cited Plaintiff's testimony and self-reports, including that his activities of daily living are limited by his physical, rather than mental, condition, he socializes and maintains family relationships, and he had recently attended parenting classes. (R. 14-15). The ALJ also highlighted Dr. Santarpia's opinion that Plaintiff has "mild limitations with decision–making, relating to others and dealing with stress" (R. 14), and specifically noted Dr. Santarpia's finding that Plaintiff had some difficulty maintaining attention due to distractibility. (R. 14-15). Therefore, having given Dr. Santarpia's opinion great weight, the ALJ incorporated into Plaintiff's RFC limitations for following simple instructions and performing simple tasks, occasionally engaging in simple decision-making, and having no more than occasional interaction with others. (R. 15). Cf. Morales, 2014 WL 4829351 at *4 (finding it "problematic" that "despite continuously asserting that Plaintiff had no limitations in either concentration or daily living due to her mental condition [], the ALJ nonetheless

concluded that Plaintiff could perform only simple, routine, repetitive tasks," without "any explanation of the reasoning" for the limitations).   The Court finds no error with this analysis.

15.    Having considered Plaintiff's challenges, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence. Defendant's Motion for Judgment on the Pleadings is therefore granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


SO ORDERED.


Dated:  February 10, 2016
        Buffalo, New York


/s/William M. Skretny
  WILLIAM M. SKRETNY
United States District Judge